# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | |
|---|---|
| MUSTAFA REDZIC, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) ) Case number 4:04cv1025 TCM ) |
| MICHAEL T. JAROMIN, District Director of the Bureau of Citizenship and Immigration Services, and MICHAEL CHERTOFF, Secretary of the Department of Homeland Security, | ) ) ) ) ) ) ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

Pending before the Court[1] is the motion of defendants, Michael T. Jaromin, the District Director of the Bureau of Citizenship and Immigration Services ("BCIS"), and Michael Chertoff, Secretary of the Department of Homeland Security,[2] to dismiss the complaint of plaintiff, Mustafa Redzic, requesting that his pending application for naturalization be granted, either by this Court or by BCIS on this Court's order.

### Background

The relevant facts are few and undisputed.

---

[1]The case is before the undersigned United States Magistrate Judge by written consent of the parties. See 28 U.S.C. § 636(c).

[2]Plaintiff amended his complaint in December 2004 to add as a defendant Tom Ridge, the Secretary of the Department of Homeland Security, and to remove John Ashcroft, the former United States Attorney General. Michael Chertoff is now the Secretary of the Department of Homeland Security and is automatically substituted for Tom Ridge as a party. See Fed.R.Civ.P. 25(d)(1).

Plaintiff is a refugee from Bosnia and has been a permanent resident in this country without interruption since June 16, 1998. On March 26, 2003, Plaintiff applied for naturalization. He was interviewed on November 4, 2003. At the interview, he signed an oath of allegiance. (Gov't Ex. A.) He did not provide the interviewer with copies of his marriage certificate to his current wife, Nabeela Saeed, the divorce decree terminating his marriage to his first wife, Jasmina Pasic, or proof of child support.[3] (Gov't Ex. E.) Consequently, he was notified that such documents had to be supplied by December 4. (Id.) He alleges, without contradiction, that he hand-delivered copies of the marriage license and divorce decree on December 2. On July 17, 2004, Petitioner was notified that "his naturalization application was still pending, and that [the Service was] waiting for the completion of all requisite record checks prior to making a final determination as to either [sic] grant or deny his application." (Gov't Mem. at 3.)

A background check of Plaintiff by the Federal Bureau of Investigation ("FBI") has not yet been completed, for reasons unrelated to Plaintiff specifically. Rather, the reasons relate to the "overwhelming number of immigration applications in recent years,"[4] the need for thorough background checks, including the added requirement that all immigration petition and applications be checked against the Interagency Border Inspection System

---

[3]This last request was not included in the notice of the interview. (Gov't Ex. D.)

[4]Defendants allege, without contradiction, that the backlog of naturalization applications waiting for completed background checks was 1.5 million applications at the end of the 2004 fiscal year.

("IBIS"),[5] and the restructuring in March 2003 of several agencies following the statutory creation of the Department of Homeland Security.[6] This restructuring included the dissolution of the Immigration and Naturalization Service and the creation of BCIS.

As of this date, Plaintiff has not been sworn in as a United States citizen. Consequently, there are obstacles to him visiting his elderly father in Montenegro – obstacles that would be removed if he were a citizen.

It is undisputed that at least 560 days have passed since Plaintiff's application interview.

## Discussion

Title 8 U.S.C. § 1447(b) provides that:

> If there is a failure to make a determination under section 1446 of this title before the end of the 120-day period after the date on which the examination is conducted under such section, the applicant may apply to the United States district court for the district in which the applicant resides for a hearing on the matter. Such court has jurisdiction over the matter and may either determine the matter or remand the matter, with appropriate instructions, to the Service to determine the matter.

See also 8 C.F.R. § § 310.5 (echoing § 1447(b)). Section 1446 establishes the procedure and criteria for investigating and examining applicants for naturalization. 28 U.S.C. § 1446. This section begins with the mandate that "[b]efore a person may be naturalized, an employee of the Service, or of the United States designated by the Attorney General, *shall*

---

[5]"The IBIS database contains information and immigration histories compiled from the FBI, USCIS, the U.S. Customs Service, and several other government agencies[,]" including, but not limited to, the Department of Agriculture, the Drug Enforcement Agency, the Central Intelligence Agency, the Internal Revenue Service, and the U.S. Coast Guard. (Mem. at 13.)

[6]See 8 U.S.C. § 1103 (charging the Secretary of Homeland Security with the administration and enforcement of, inter alia, laws relating to the immigration and naturalization of aliens).

conduct a personal investigation of the person applying for naturalization . . ." Id. § 1446(a) (emphasis added).  See also 8 C.F.R. § 335.1 ("Subsequent to the filing of an application for naturalization, the Service shall conduct an investigation of the application.  The investigation shall consist, at a minimum, of a review of all pertinent records, . . .").

Title 8 C.F.R. § 335.2, titled "Examination of applicant," delineates the progression of the examination of an applicant for naturalization:

> (a) General.  Subsequent to the filing of an application for naturalization, each applicant shall appear in person before a Service officer designated to conduct examinations pursuant to § 332.1 of this chapter.  The examination shall be uniform throughout the United States and shall encompass all factors relating to the applicant's eligibility for naturalization . . .
>
> (b) Completion of criminal background checks *before* examination.  The Service will notify applicants for naturalization to appear before a Service officer for initial examination on the naturalization application *only after* the Service has received a definitive response from the [FBI] that a full criminal background check on an applicant has been completed.

(Alteration and emphasis added.)  A definitive response would be that the applicant did or did not have an administrative or criminal record, § 335.2(b)(1), (b)(2), or that the fingerprint cards were unclassifiable for purposes of conducting the background check and had been rejected, § 335.2(b)(3).

The regulations further require that "[a] decision to grant or deny the application shall be made at the time of the initial examination or within 120 days after the date of the initial examination of the applicant for naturalization under § 335.2.  The applicant shall be notified that the application has been granted or denied . . ."  8 C.F.R. § 335.3(a).

Defendants first argue that Plaintiff fails to state a cause of action.  See Fed.R.Civ.P. 12(b)(6) (providing for the dismissal of a complaint that fails to state a cause of action on its face).

"A plain reading of § 1447(b) indicates that Congress expressly provides for a consequence should BCIS fail to make a determination on a naturalization application within 120 days of the applicant's examination[.]"  **Castracani v. Chertoff**, — F.Supp.2d — (D. D.C. July 5, 2005) (2005 WL 1566443 at *3) (alteration added).  The consequence is that the applicant may apply to the district court for a hearing.  8 U.S.C. § 1447(b).

Before such a request may be made, however, there must (a) be an examination and (b) a time lag of at least 120 days.

The United States District Court for the Eastern District of Virginia interpreted "examination" to be "a *process* the agency follows to gather information concerning the applicant."  **Danilov v. Aguirre**, 370 F.Supp.2d 441, 443 (E.D. Va. 2005).  Noting that § 1446(b) provided for, among other things, the issuance of subpoenas, the taking of testimony under oath, and the production of documents, the court held that a review of the applicant's FBI background investigation was part of the examination process, regardless of whether that investigation had been completed prior to the applicant's interview, and, therefore, the 120-day period did not begin to run until that review "and all other aspects of the examination process are completed."  **Id.** at 444.

In the case before it, the 120-day period begin to run at the earliest in March 2005 when BCIS received the FBI background information on the applicant and had not yet

expired. **Id.** at 444-45. The court then dismissed the applicant's § 1447(b) request for lack of subject matter jurisdiction.

This Court respectfully disagrees. Title 8 C.F.R. § 335.2 defines what an examination should entail. It also specifically requires that the initial examination be conducted *after* the Service received a definitive response from the FBI about the background check on the applicant. 8 C.F.R. § 335.2(b). Clearly, the regulations separate the background check from the examination, whether that term be construed to reflect an event isolated in time or a process. Additionally, the regulations provide for a *re*examination on a continued case, 8 C.F.R. § 335.3(b) (emphasis added), and require that "an applicant requesting a postponement of the *second* examination . . . agree in writing to waive the requirement under section 336 of the Act that the Service must render a determination on the application within 120 days from the initial interview," 8 C.F.R. § 312.5(b) (emphasis and alteration added). The references to a "reexamination," to a "second examination," and to waiver would be unnecessary if the term "examination" referred to a process that ended only with the completion of the information-gathering process by BCIS, as the court found in **Danilov**, 370 F.Supp.2d at 443-44.

Nor is this Court's exercise of subject matter jurisdiction inconsistent with Congressional intent. "A central purpose of [§ 1447(b)] was to reduce the waiting time for naturalization applicants." **United States v. Hovsepian**, 359 F.3d 1144, 1163 (9th Cir. 2004) (citing statement of Rep. Morrison, printed in 135 Cong. Rec. H4539-02, H4539-02 (1989)). If the 120-day period did not begin to run until the information gathering process was complete, this purpose would be vitiated.

Although this Court has subject matter jurisdiction, see **Angel v. Ridge**, 2005 WL 1263143 at *4 (S.D. Ill. May 25, 2005), it does not necessarily follow that the Court must hold a hearing on Plaintiff's application for naturalization.

Section 1447(b) was enacted as part of the Immigration Act of 1990. Immigration and naturalization in the United States is not now what it was then. This change is reflected in the processing of naturalization applications. As noted by a report of the BCIS ombudsman[7]:

> [D]uring the [2003] fiscal year, [BCIS] received more than 7.1 million applications and petitions. As of October 2003, more than six million applications and petitions were in process. [BCIS] projects new annual filings of approximately six million applications and petitions for FY's 2004 through 2006 . . . [BCIS] has offered two reasons for the prolonged processing times now occurring . . .: (1) additional national security responsibilities following the terrorist attacks on the U.S. of September 11, 2001, and (2) the transition of immigration functions to the Department of Homeland Security. [BCIS's] new responsibilities include additional mandatory security checks, which often are recurrent because of limited validity periods. Further processing "interim benefits" (e.g., employment authorization), which generally are reviewed on an annual basis, exacerbates the already extensive processing times and further perpetuates backlog growth.

81 No. 28 Interpreter Releases 937, 938 (July 19, 2004) (summarizing the Citizenship and Immigration Services Ombudsman Annual Report 2004) (alterations added). The processing time of applications vary from one BCIS district to another. Id. Additionally, BCIS does not "have authority to expedite the FBI investigation or give [an applicant] priority over background checks requested by other agencies." **Alkenani v. Barrows**, 356 F.Supp.2d 652. 657 (N.D. Tex. 2005) (alteration added).

---

[7]The position of Citizenship and Immigration Services Ombudsman was created as part of the Homeland Security Act of 2002. See 6 U.S.C. § 272.

Plaintiff filed his naturalization application in 2003. Neither party cites any hindrance to its approval other than the delay in processing experienced by applicants in general.

Section 1447(b) gives the court discretion to either determine the matter or to remand the matter, with appropriate instructions. Plaintiff would have this Court conduct a hearing and either administer him the naturalization oath or remand the matter to the Secretary with instructions to do so. For the Court to accede to this request would be to (i) give Plaintiff priority over other applicants because he had the funds to pursue a § 1447(b) complaint and (ii) relieve him of the required FBI or IBIS checks.

As did the court in **Alkenani**, 356 F.Supp.2d at 657, this Court sympathizes with Plaintiff and his desire to complete the naturalization process and see his elderly father. The Court is certain, however, that other applicants are equally anxious and have other, equally compelling reasons to become United States citizens. Consequently, the Court declines to give Plaintiff's application priority over that of others who are similarly situated but for the decision and resources to pursue § 1447(b) relief.[8]

## Conclusion

Defendants move to dismiss this action on the grounds that Plaintiff's complaint fails to state a cause of action and that the delay in processing his naturalization application is not unreasonable. The Court finds that the complaint does state a cause of action. Defendants' second ground addresses the merits of the complaint and is not a basis for its dismissal. This ground is a basis, however, for denying Plaintiff the relief he seeks. Accordingly,

---

[8]The Court "also recognizes that 'judicial deference to the Executive Branch is especially appropriate in the immigration context.'" **Alkenani**, 356 F.Supp.2d at 657 (quoting INS v. Aguirre-Aguirre, 526 U.S. 415, 425 (1999)).

**IT IS HEREBY ORDERED** that the claims against John Ashcroft are **DISMISSED** and that Michael Chertoff is substituted for Tom Ridge as the Secretary of the Department of Homeland Security.

**IT IS FURTHER ORDERED** that Defendants' motion to dismiss is **DENIED**. [Doc. 12]

**IT IS FURTHER ORDERED** that Plaintiff's motion for leave to file discovery out-of-time, specifically at least four months after the deadline for doing so and also after the briefing on the pending dispositive motion has been completed, is also **DENIED**. [Doc. 18]

**IT IS FINALLY ORDERED** that this matter is **REMANDED** to the Secretary of Homeland Security with instructions to process Plaintiff's application for naturalization within a reasonable time and that Plaintiff's complaint is **DISMISSED** as to any other relief requested.

/s/ Thomas C. Mummert, III
THOMAS C. MUMMERT, III
UNITED STATES MAGISTRATE JUDGE

Dated this 21st day of July, 2005.